## No. 16,369.

INDUSTRIAL COMMISSION ET AL. *v.* STATE COMPENSATION
INSURANCE FUND ET AL.
(220 P. [2d] 721)

Decided June 26, 1950.

Messrs. YOUNG & YOUNG, for plaintiff in error West.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS is a review of the judgment of the district court reversing an award of the Industrial Commission. The

only testimony is that of the claimant. Under the Workmen's Compensation Act, plaintiff in error West filed a claim for compensation against the Antlers Hotel Company of Colorado Springs for injuries sustained while in the course of his employment as an employee of the hotel company. A referee of the Industrial Commission entered an award in the claimant's favor, which was approved by the commission, which final award, in due course, was reviewed by the district court and reversed. In prosecution of this writ of error, claimant specified five points for reversal, which in substance amount to a contention that the trial court erred in holding that claimant was an insured employer and not an employee of the hotel company; that section 50 of the Workmen's Compensation Act (section 329, chapter 97, '35 C.S.A.) bars claimant from recovery; that the trial court's construction of the statute involved violates the United States Constitution in that it is a denial of equal protection of the laws; further, that it violates section 25 of article V of the Colorado Constitution; and further, that the court erred in holding that the hotel company *contracted out* the work that was being done by claimant, and, therefore, claimant was barred from recovery under the pertinent statute.

The facts upon which the application of the statute must rest are undisputed and are found in claimant's testimony, and he was the only witness. Briefly narrated, he testified that the hotel company was doing an extensive job of interior remodeling; that George Everett was the chief engineer for the hotel company, and that the arrangements concerning the matter of the employment were made between claimant and Everett; there was no general contractor in charge of the work, but that a Mr. Stenlicht seemed to be a sort of foreman from whom he took orders, as well as from Mr. Everett; that when he contacted Everett concerning the employment, Everett told him they had considerable plastering to do and took him through the building to

show him what had been done; that the hotel company had had another man employed on the job whose work was unsatisfactory, and they wanted claimant to take over; that his agreement was that he was to work and furnish any men that he had with him, meaning a helper or helpers; that they would pay $2.50 an hour for plasterer and $1.50 for helper; that claimant is a plasterer by trade and employs others in his business and carries workmen's compensation insurance on his men; that he performed services for those who wished to hire him either under contract or by the day; that in his arrangement with Everett, there was no specific time mentioned as to how long he would be hired, nor any specific amount of plastering that was to be done; that the hotel company furnished all of the materials and the equipment except at times when they were short of scaffolding, then claimant brought some of his own to the hotel for use; that while in this employment, he was directed by Everett, the engineer, to do some brick work on another building owned by the hotel company, and also some work in covering pipes in the boiler room with asbestos; that such work is not included in plastering; that from the arrangements, claimant believed he would be on the job as long as his work was satisfactory, and that he knew of nothing that prevented him from being discharged at any time, nor of anything that prevented him from quitting the job at any time; that he worked wherever he was directed and did what he was told to do; that he worked on the job himself as plasterer and he had another plasterer and two helpers; that he was paid once a week and was given eight dollars an hour, out of which he paid the other plasterer and the two helpers; that it was understood that claimant would be personally on the job but he did not have to be there; and that Everett, the engineer, knew that claimant intended to work as a plasterer.

While on the job and in the course of employment which had continued from the early part of 1949, on

March 8, 1949, claimant fell from a scaffold, suffering a fracture of his left scapula and ulna, eight broken ribs, fractured wrist and was temporarily and totally disabled from the date of his injuries to April 23, 1949, when he returned to work in a limited degree.

Hearing was had before a referee of the Industrial Commission at Colorado Springs on May 27, 1949, and the pertinent part of the referee's finding and order is as follows:

"Claimant is a plasterer, mason, and cement worker who employs others and carries a policy of Workmen's Compensation Insurance with the American Employers Insurance Company. He performs services for those who wish to hire him, either under contract or by the day. About January 1, 1949, he undertook to finish a job of plastering for the respondent employer which had been commenced by another, but terminated by respondent because the work was not being performed satisfactorily. In the doing of this work claimant was to receive $4.00 per hour for each pair (one plasterer and his helper) employed on the job. Claimant was not obliged to pay the man that he employed that much, so there was a margin of profit to claimant from each pair employed. The hotel furnished all materials, tools and equipment (except when short of certain tools and equipment claimant furnished some of his own), and the work to be done was indefinite both as to time and amount, and it was optional with claimant whether he worked on the job himself. Under these circumstances claimant, though an insured employer, was an employee of respondent, Antlers Hotel Company. Accordingly, section 50 of the Workmen's Compensation Act (Section 329, Chapter 97 C.S.A. 1935) does not apply."

It is contended that the question of liability herein is governed by section 329, chapter 97, '35 C.S.A., which is as follows: "Every person, company or corporation, that owns any real property or improvements thereon and that contracts out any work done on and to said

property to any contractor, sub-contractor, person or persons, who shall hire or use four or more employees or workmen (including himself if working thereon) in the doing of such work, shall be deemed to be an employer under the terms of this article and every such contractor and sub-contractor, person or persons, as well as his or their employees shall each and all of them be deemed to be employees as defined in this article and such employer shall be liable as provided in this article to pay compensation for injury or death resulting therefrom to said contractor, and sub-contractor and their employees and shall before commencing said work insure and shall keep insured his liability as herein provided. Such employer shall be entitled to recover the cost of such insurance from said contractor, sub-contractor, person or persons, and may withhold and deduct the same from the contract price or any royalties or other money due, owing or to become due said contractor, or sub-contractor, person or persons; *provided, however, that if said contractor, or sub-contractor, person or persons doing or undertaking to do any work for an owner of property as above provided shall himself be an employer as defined in this article and shall before commencing said work insure and shall keep insured his liability for compensation as herein provided then and in that case said owner of said property shall not be subject to the provisions of this section."*

The only question before us is whether or not claimant, in doing the work herein outlined on the agreement as stated by him, was an employee of the hotel company or whether or not the hotel company contracted the work out to him, and the fact that he had insurance on his men, which he had carried for about two years, precluded his recovery when injured on the job as a workman. Defendant in error contends that claimant was not an employee, but an independent contractor

carrying insurance on his men, and, therefore, not within the terms of the above quoted statute.

Difficulty usually arises in making a determination from the facts as to whether the classification is that of servant or a contractor. To make the distinction here, we look to the following undisputed facts: The understanding contemplated claimant working on the job; that the hotel company had complete control and directions over the work; that it furnished the materials and all equipment; that it could discharge claimant at any time without liability, and that claimant was free to quit at any time without liability; and that the compensation for the work was not measured by the job.

■ It is clear that the hotel company, the owner of the property, had the right to terminate the employment at any time without liability to claimant. "Where such right exists the workman is usually a servant. Where it does not exist he is usually a contractor. The measure of compensation is also important for where it is based upon time or piece the workman is usually a servant and where it is based upon a lump sum for the task he is usually a contractor." *Industrial Commission v. Hammond*, 77 Colo. 414, 236 Pac. 1006; *Industrial Commission v. Bonfils*, 78 Colo. 306, 241 Pac. 735.

From the above facts, the referee of the Commission found claimant to be an employee of the hotel company, even though he was an insured employer, and it is readily seen that there is ample substantial evidence to support this finding.

■ It is certain that the statute provides that the building owner "Shall keep insured *his* liability." His liability means a liability not only to the employees of a contractor, but also to the contractor himself if working on the job. The latter part of the statute that relates to the situation where the one contracting to do any work for an owner is an employer, and before commencing the job has provided liability for compensation, then the owner is not subject to the provisions

of the Act. We interpret this provision in the statute as one under which, if the owner is contracting out .a job, he protects himself against liability for anyone injured on the job by seeing that the contractor with whom he is dealing provides or carries a policy on all workmen on the job contracted for. This part of the statute does not apply in this case where the work was not "contracted out" to claimant even though claimant is by business or trade a contractor and when doing contract work had his men insured at the time of. the accident here involved. The fact that such employees as were on the job working with claimant were covered by such insurance, and not for this particular job, does not preclude claimant from recovery and he is excluded from the operation of that part of the Act under discussion. As we view the situation before us, there would be no controversy here, and liability would not be denied, had it not been for the fact that claimant carried such insurance, which, however, was provided long before any of the beneficiaries went to work on the hotel company job.

It is contended that the case of *Alson Investment Co. v. Youngquist*, 107 Colo. 1, 108 P. (2d) 228, is controlling in this case. With that contention, we do not agree because the issue there was between two companies, or more directly, between their insurance carriers, as to which was liable to pay the compensation found to be due. The Alson case, supra, determines nothing more or less than the liability as between the insurance carriers. It decides no part of the real question before us, which as presently advised, is one of first impression before our courts.

Under our interpretation of the statute as applied to the facts herein, the referee of the commission was right in determining that the hotel company was not only the employer *in law*, but was the employer *in fact*. It is our opinion that the Act under discussion is constitutional; however, if it could be subject to the

interpretation given it by the trial court, we would then be compelled to say that it is unconstitutional.

The findings and award of the Industrial Commission on the matters discussed herein were right and should be, and are, affirmed, and the judgment of the trial court is reversed.